*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* C.A.B., Minor.

---

PEOPLE OF THE STATE OF MICHIGAN,

      Petitioner-Appellee,

v

C.A.B., Minor.

      Respondent-Appellant,

and

LANNY BUCKNER and DANIELLE BUCKNER,

      Appellants.

UNPUBLISHED
December 7, 2023

No.  364128
Genesee Circuit Court
Family Division
LC No.  20-136942-DL

---

Before:  HOOD, P.J., and JANSEN and FEENEY, JJ.

PER CURIAM.

Respondent and his parents appeal by right the circuit court's decision ordering restitution of $53,629.54 for property damage sustained as a result of his juvenile-delinquency admissions to felonious assault, MCL 750.82(1), and attempted first-degree arson, MCL 750.72(1)(a) and MCL 750.92, after he set fire to the victims' home.  Respondent argues that the trial court's decision ordering the replacement value of the home was contrary to *In re White*, 330 Mich App 476; 948 NW2d 643 (2019), in which this Court held that a court may not order a juvenile delinquent to pay restitution in the amount of a property's replacement value.  Because it is unclear how the trial court achieved its final restitution calculation, it is necessary to remand this case to the trial court for a more detailed explanation of its determination of $52,891 in restitution after the juvenile set fire to the victim's home. Accordingly, we reverse and remand.

## I. BACKGROUND

In the middle of the night on June 5, 2020, respondent poured gasoline on the exterior of the garage of the home where his former friend lived and lit the gasoline on fire. He knew what he had done, and he instantly regretted it. At the time, four people were asleep in the home. Respondent admitted to felonious assault and attempted first-degree arson.

At the restitution hearing, the homeowner testified that he had purchased the home for $165,000 in 2014. He opined that, at that time, it had been "the rock bottom of the real estate market in our area" and that he had received a "great deal" on the home which was built in 1857. The homeowner testified that the home was a total loss because even portions of the home that did not burn had been damaged. He testified both that he had had to demolish and rebuild the house, and that he had been able to save portions of the home through restoration. Insurance had provided the replacement cost of the home, with an additional amount for code upgrades, but the victims had had to pay almost $97,000 out of pocket to rebuild the home due to the costs of obtaining building materials and construction during the COVID-19 pandemic. The homeowner also testified that he had to pay $6,690.56 out of pocket to replace the 2016 Tahoe that he purchased 5 months before the fire and that was a total loss. He found a Tahoe in New York that had similar miles and the same model year, and flew there to retrieve it but had to pay more than he paid for the original Tahoe due to COVID. The homeowner also testified that he paid over $700 to tow and re-key the electronic key fob for his son's Chevrolet Malibu as the key was melted in the fire.

Respondent argued that, pursuant to Michigan common law and statute, the trial court could not order respondent to pay replacement costs. Rather, the proper amount of restitution was the decrease in the fair market value of the home caused by respondent's conduct. Following the hearing, the trial court found that the victims had suffered significant damages as a result of respondent's crimes. The court found that the prosecutor did not establish the home's fair market value and therefore, it opined that it must consider the evidence presented. After finding that the victims' insurance company had determined that the replacement cost of the home was $428,750, and had provided an additional $78,224.50 for code upgrades, the court determined that a reasonable amount of restitution was $52,891, which accounted for some of the out-of-pocket expenses but did not include owner-approved overages, change orders, and debris removal:[1]

> The total loss exceeded the limits of the insurance coverage, which left the victim to pay out-of-pocket costs of $96,694.27. The statute [MCL 712A.30(3) and MCL 780.794] does not contemplate COVID construction upcharges or owner approved overages. Therefore, the court determines the reasonable amount of restitution as to the house to be $52,891.00 which accounts for some of the out-of-pocket expenses, minus the owner approved overages and changes orders and additional debris removal paid by insurance. There was no evidence related to the fair market value or replacement value of the Chevy Tahoe on the day of the loss or the date of

---

[1] The trial court also declined to award the victims' requested replacement value for a car and found that their claims for work-loss and counseling costs had not been supported. On appeal, respondent does not challenge the portion of the restitution order requiring him to pay for new keys for a car whose keys were lost in the fire.

the disposition. Exhibit #1 did include an invoice for the cost of the new Tahoe that was purchased, however that statute doesn't contemplate COVID increases, and the victim was reimbursed replacement cost by insurance in the amount of $36,871.20. The Court will order that the cost of the towing and re-keying of the Malibu be added to the restitution order in the amount of $738.54.

While the homeowner testified about his wife taking three weeks off work as a nurse at Hackley Hospital to ensure that the family had a place to live, clothing, food, and transportation, there was no other evidence presented regarding her lost wages or their son's counseling fees as he was struggling with severe anxiety after the fire. The trial court also determined that the juvenile's parents would be ordered to also pay on the restitution amount pursuant to MCL 780.794.

## II. STANDARD OF REVIEW

This Court reviews the trial court's calculation of a restitution amount for an abuse of discretion. *White*, 330 Mich App at 481. The trial court abuses its discretion when its chosen outcome falls outside the range of principled outcomes or when the court has made an error of law. *Id*. This Court reviews de novo issues of law, including issues of statutory interpretation. *Id*.

## III. ANALYSIS

Respondent argues that the trial court erred by ordering him to pay the replacement cost of the victims' damaged home rather than the reduction in the home's fair market value.

A juvenile offense is "a violation by a juvenile of a penal law of this state or a violation by a juvenile of an ordinance of a local unit of government of this state punishable by imprisonment or by a fine that is not a civil fine." MCL 712A.30(1)(a). At the dispositional hearing for a juvenile offense, "the court shall order, in addition to or in lieu of any other disposition authorized by law, that the juvenile make full restitution to any victim of the juvenile's course of conduct that gives rise to the disposition or to the victim's estate." MCL 712A.30(2). Section 3 of MCL 712A.30 states:

> If a juvenile offense results in damage to or loss or destruction of property of a victim of the juvenile offense, or results in the seizure or impoundment of property of a victim of the juvenile offense, the order of restitution *may require* that the juvenile do 1 or more of the following, as applicable:
>
> (a) Return the property to the owner of the property or to a person designated by the owner.
>
> (b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (*i*) or (*ii*), less the value, determined as of the date the property is returned, of that property or any part of the property that is returned:
>
> (*i*) The value of the property on the date of the damage, loss, or destruction.
>
> (*ii*) The value of the property on the date of disposition.

-3-

(c) Pay the costs of the seizure or impoundment, or both. [MCL 712A.30(3); emphasis added.]

MCL 712A.31 states in relevant part:

(1) In determining the amount of restitution to order under section 30 of this chapter, the court shall consider the amount of the loss sustained by any victim as a result of the juvenile offense….

* * *

(4) Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the juvenile offense shall be on the prosecuting attorney….

Restitution is "compensation or reparation for the loss caused to another." *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006). "The controlling factor with respect to determining the amount of restitution is the victim's loss." *In re White,* 330 Mich App at 482-483. "Under the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq.*[,] … if a felony … results in the loss of a victim's property, the trial court may order the defendant to pay to the victim, as restitution, the value of the property that was lost." *Gubachy,* 272 Mich App at 708, citing MCL 780.766(3) of the CVRA. "The juvenile code, MCL 712A.30 and MCL 712A.31, utilizes the same statutory scheme for restitution that was delineated in the Crime Victim's Rights Act (CVRA), MCL 780.766 and MCL 780.767, and therefore judicial interpretations of the CVRA may be applied to the corresponding provisions in the juvenile code. *In re McEvoy*, 267 Mich App 55, 61-63; 704 NW2d 78 (2005)." *In re White*, 330 Mich App 476, 480; 948 NW2d 643 (2019).[2] We

---

[2] The CVRA, MCL 780.766, substantially mirrors MCL 712A.30, including the provision regarding the juvenile's parents being required to pay any restitution amounts, but there are notable differences:

(3) If a crime results in damage to or loss or destruction of property of a victim of the crime or results in the seizure or impoundment of property of a victim of the crime, the order of restitution shall require that the defendant do 1 or more of the following, as applicable:

(a) Return the property to the owner of the property or to a person designated by the owner.

(b) If return of the property under subdivision (a) is impossible, impractical, or inadequate, pay an amount equal to the greater of subparagraph (i) or (ii), less the value, determined as of the date the property is returned, of that property or any part of the property that is returned:

(i) The fair market value of the property on the date of the damage, loss, or destruction. However, *if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.*

(ii) The fair market value of the property on the date of sentencing. However, *if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value.*

(c) Pay the costs of the seizure or impoundment, or both.

\* \* \*

(15) If the court determines that a juvenile is or will be unable to pay all of the restitution ordered, after notice to the juvenile's parent or parents and an opportunity for the parent or parents to be heard the court may order the parent or parents having supervisory responsibility for the juvenile at the time of the acts upon which an order of restitution is based to pay any portion of the restitution ordered that is outstanding. An order under this subsection does not relieve the juvenile of his or her obligation to pay restitution as ordered, but the amount owed by the juvenile shall be offset by any amount paid by his or her parent. As used in this subsection:

(a) "Juvenile" means a person within the court's jurisdiction under section 2d or 4 of chapter XIIA of the probate code of 1939, 1939 PA 288, MCL 712A.2d and 712A.4.

(b) "Parent" does not include a foster parent.

(16) If the court orders a parent to pay restitution under subsection (15), the court shall take into account the parent's financial resources and the burden that the payment of restitution will impose, with due regard to any other moral or legal financial obligations the parent may have. If a parent is required to pay restitution under subsection (15), the court shall provide for payment to be made in specified installments and within a specified period of time.

(17) A parent who has been ordered to pay restitution under subsection (15) may petition the court for a modification of the amount of restitution owed by the parent or for a cancellation of any unpaid portion of the parent's obligation. The court shall cancel all or part of the parent's obligation due if the court determines that payment of the amount due will impose a manifest hardship on the parent and if the court also determines that modifying the method of payment will not impose a manifest hardship on the victim. [Emphasis added.]

note that, while *White* and *McEvoy* referred to MCL 780.766 and MCL 780.767, more applicable to juvenile proceedings would be MCL 780.794 and MCL 780.795 which has substantially similar language, particularly with respect to the reference to utilizing replacement cost. In fact, it was MCL 780.794, not MCL 780.766, that the trial court relied upon in its opinion.[3]

Principles of stare decisis "require this Court to reach the same result in a case that presents the same or substantially similar issues presented in a case that another panel of this Court has decided." *Enbridge Energy, LP v Michigan*, 332 Mich App 540, 554; 957 NW2d 53 (2020). See MCR 7.215(C)(2). This Court has held that "a restitution award premised on the basis of the replacement value of damaged property is improper." *White*, 330 Mich App at 483 (quotation marks and citation omitted). This Court further stated:

> The value of a victim's loss due to damaged property . . . is not based on the cost to repair it or to return it to the condition it was in before the damage. Rather, the value of a victim's loss due to damaged property is based on the decrease in the property's fair market value due to the damage. [*White*, 330 Mich App at 486.]

In this case, the trial court held that the proper amount of restitution was the replacement value of the home, and its award included out-of-pocket expenses that the victims paid when restoring the home to its previous condition. Thus, the question presented is whether *White* controls the case at bar. We conclude that it does not.

As noted above, *White* relied upon *McEvoy*. The problem with relying on *McEvoy* is that it was decided in 2005. But, effective July 1, 2009, 2009 PA 28 added the same sentence to all four locations in MCL 780.766(3)(b)(i) and (ii) and MCL 780.794(3)(b)(i) and (ii): "However, if the fair market value of the property cannot be determined or is impractical to ascertain, then the replacement value of the property shall be utilized in lieu of the fair market value." And while *White* was decided after this amendment to the statutes, it did not consider the effect of those provisions. Moreover, the facts of *White* are substantially different than those in the case at bar. *White* did not involve the destruction of real estate. Rather, it involved a stolen vehicle that was recovered and returned to the victim, except that a hidden key to the vehicle was not recovered. Rather than having the locks changed, the victim chose to replace the vehicle. The trial court ordered restitution which included what the cost of replacing the locks would have been. 330 Mich App at 478-480.

Given the substantially different facts in *White* and that *White* did not analyze whether the language added by the 2009 amendment to the CVRA applied to that case, we conclude that this case is not bound by the decision in *White*. But the question remains whether it was impossible or impractical for the trial court to ascertain the destroyed property's fair market value and, therefore, whether the trial court properly looked to the replacement cost in determining restitution.

---

[3] Curiously, respondents argue on appeal that MCL 780.794 has no applicability to juveniles. Yet all of Article 2 of the CVRA, which includes MCL 780.794, explicitly applies to juvenile proceedings.

As there was no evidence in the record regarding fair market value as required under MCL 712A.30(3)(b), nor any fair market value analysis by the trial court, on remand, the trial court shall conduct a new restitution hearing wherein the burden is on the prosecution to offer evidence regarding fair market value as of the date of the arson and the date of disposition, or evidence why it is impossible or impractical to determine that amount.  MCL 712A.30(3)(b)(*i*), (*ii*) MCL 712A.31(4).[4] The prosecution may elect to present additional testimony, see *People v Corbin*, 312 Mich App 352, 371; 880 NW2d 2 (2015), but restitution is not properly awarded for losses covered by insurance, *People v Corbin*, 312 Mich App 352, 360; 880 NW2d 2 (2015).  If the trial court determines that it is possible and practical to determine the fair market value of the property, it shall proceed to do so and enter a restitution award accordingly.  If the trial court determines that it is impossible or impractical to determine fair market value, it may then enter an award reflecting the replacement cost of the property.  In this event, the trial court shall enter detailed findings explaining how it reached the amount awarded.

We reverse and remand for new proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Kathleen Jansen
/s/ Kathleen A. Feeney

---

[4] In making this determination, the trial court may consider whether awarding fair market value rather than replacement cost is practical given the destruction of the property and the need to rebuild the house.